JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, A.W., appeals from the order of the Cuyahoga County Court of Common Pleas, Juvenile Division, that adjudicated him delinquent on the charge of engaging in conduct which, if committed by an adult, would have constituted the offenses of felonious assault and discharging a firearm on or near prohibited premises. Appellant raises two assignments of error for review: (1) challenging the manifest weight of the evidence to support the adjudication, and (2) asserting that he received ineffective assistance of counsel because his lawyer failed to object to the improper testimony of two of the state's witnesses. Finding no merit to this appeal, we affirm.
 {¶ 2} A complaint was filed in the juvenile court charging A.W., age 15, with one count of felonious assault with one and three-year firearm specifications and one count of discharging a firearm on or near prohibited premises. An adjudicatory hearing commenced on May 21, 2007 in which both sides presented witnesses. The state's witnesses and the defense witnesses presented different accounts of the incident.
 {¶ 3} The state presented three witnesses: Marlene Poke, Nathaniel Poke, and Mrs. Poke's 15-year-old daughter, A.H. The state's witnesses established that on July 2, 2006, there was a party at the Poke home on Colfax Road in the city of Cleveland. More than 50 teenagers, including appellant and his older brother, Tony Halloway, attended the party. The party was held in the Pokes' large garage. A.H. *Page 4 
saw appellant smoking in the garage, which was against the Pokes' rules. A.H. asked appellant to stop. She then went and told her mother and stepfather that appellant was smoking in the garage. Mr. Poke asked appellant to stop smoking and the two exchanged heated words. Mr. Poke told appellant to leave the party. The two continued arguing as appellant was being escorted off the property. Appellant's brother, Tony, then pulled a gun and pointed it in Mr. Poke's face and started swearing at him. Appellant took the gun from Tony and fired it in the direction of Mr. Poke. Mr. Poke, Mrs. Poke, and A.H. scattered and took cover. They then called the police.
 {¶ 4} The defense presented two witnesses: Akira, Marlene Poke's older daughter, and A.M., appellant's 15-year-old cousin. A.M. testified that he was at the party when Mr. Poke got angry at appellant for smoking. He heard Mr. Poke tell appellant to leave but thought he was just joking around. He said he and appellant walked to a nearby store. When they were coming back from the store and walking toward the Pokes' yard, he heard a gunshot.
 {¶ 5} Akira testified that she was in the house with appellant's brother, Tony, and did not know what happened outside. She said she heard a gunshot outside, but did not see who fired the gun. She further testified that when she and Tony went outside, she saw appellant "[c]oming from the alley, from the store." She did not see appellant with a gun. *Page 5 
 {¶ 6} "I. Defendant's convictions for felonious assault and discharging a firearm were against the manifest weight of the evidence."
 {¶ 7} Appellant asserts that the testimony presented by each of the state's witnesses is inconsistent and contradicts the testimony of the other witnesses, specifically the two witnesses for the defense. He points to past disputes leading to bad feelings between the two families. He argues that a reasonable trier of fact, taking all of the testimony into consideration, could not come to a conclusion as to who committed the offenses. We disagree.
 {¶ 8} An adjudication of delinquency of a juvenile is reviewed under the same standards as a criminal conviction. To determine whether a verdict or judgment of conviction is against the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In doing so, the court is mindful that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. This deference means that the trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." State v. Antill (1964),176 Ohio St. 61, 67. A new trial should be granted only in the *Page 6 
exceptional case in which the evidence weighs heavily against conviction. Thompkins, supra.
 {¶ 9} Appellant asserts that the inconsistencies in the testimony of the state's witnesses demonstrates that the state's evidence is of such suspect quality that acquittal is required. As examples, he points to inconsistencies in the testimony relating to the number of people at the party, how appellant got to the party, and exactly who was standing around the backyard when the gun was discharged.
 {¶ 10} It is true that there are some inconsistencies in the state's witness' testimony. When questioned as to the number of people at the party that night, A.H. said, "about 50 or 60 kids;" Mr. Poke said "between 50 to 100 kids;" and Mrs. Poke did not answer the question directly but said at these parties they usually have "between 100 to 200 kids in the garage." Mrs. Poke also testified that appellant got a ride to the party from his aunt, but Mr. Poke testified that he picked up appellant, Tony, Akira, and others and brought them to the party. While the record reflects certain inconsistencies in the state's evidence, none of the inconsistencies relate to the essential elements of the offenses charged.
 {¶ 11} Appellant was charged with felonious assault and discharging a firearm on or near prohibited premises. R.C. 2903.11 defines the elements of felonious assault and provides in pertinent part, "No person shall knowingly * * * cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C.2903.11(A)(2). *Page 7 
 {¶ 12} The elements of discharge of a firearm on or near prohibited premises are found at R.C. 2923.162 which provides in pertinent part, "No person shall * * * discharge a firearm on a lawn * * * or other ground appurtenant to * * * [an] inhabited dwelling * * *.
 {¶ 13} On issues of fact relating to the elements of the offenses charged, the state's witnesses were consistent in their testimony. All three of the state's witnesses testified that appellant was smoking in the garage leading to an argument with Mr. Poke, and that Mr. Poke told appellant to leave the party. All three of the state's witnesses testified that they saw Tony pull a gun and put it in Mr. Poke's face. All three stated they saw appellant take the gun from Tony and fire it in Mr. Poke's direction. All three were absolutely certain they saw the gun in appellant's hand when it was fired.
 {¶ 14} The only significant conflicts in the evidence came from Akira's testimony that Tony was in the house with her when the gun was shot, and A.M.'s testimony that he and appellant were at the store at the time of the shooting. Neither of these witnesses can be considered disinterested. It was established that Akira and appellant's brother, Tony, recently had a baby together and, that Akira and Mr. Poke had problems with each other in the past. A.M. is appellant's cousin, and he testified that he and appellant were as close as brothers and did not want appellant to get in trouble. *Page 8 
 {¶ 15} Upon review of all of the evidence and in light of the above, we cannot say that the trial court lost its way in resolving conflicts in the evidence. Neither do we find this to be one of those exceptional cases where the evidence weighs heavily against adjudication. Appellant's first assignment of error is overruled.
 {¶ 16} "II. Defendant A.W. was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution."
 {¶ 17} In order to demonstrate ineffective assistance of counsel, appellant must first show that counsel's performance was deficient by showing that counsel committed errors so serious that he or she was not, in effect, functioning as counsel. Strickland v. Washington (1984),466 U.S. 668, 687. Second, appellant must demonstrate that these errors prejudiced his defense such that there exists a reasonable probability that, were it not for counsel's unprofessional errors, the outcome of the trial would have been different. State v. Bradley (1989),42 Ohio St.3d 136, 143.
 {¶ 18} "Judicial scrutiny of counsel's performance must be highly deferential."
Strickland, 466 U.S. at 689. In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner.State v. Smith (1985), 17 Ohio St.3d 98; Vaughn v. Maxwell (1965),2 Ohio St.2d 299, 209 N.E.2d 164. *Page 9 
 {¶ 19} Appellant asserts that defense counsel was deficient for failing to object to A.H.'s testimony relating to statements made during the argument over appellant's smoking in the garage. He argues that A.H.'s testimony recounting what her mother and stepfather said to appellant and appellant's responses amounted to inadmissable and prejudicial hearsay. He further argues that defense counsel was deficient in failing to object to Mr. Poke's rambling narrative account of the events of the evening. Appellant asserts that the cumulative effect of such errors deprived him of a fair trial. We disagree.
 {¶ 20} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Appellant contends counsel should have objected to the following testimony by A.H.:
 {¶ 21} "Q. Okay. And then you got your dad?
 {¶ 22} "A. Yeah.
 {¶ 23} "Q. He told them to stop smoking?
 {¶ 24} "A. Yeah.
 {¶ 25} "Q. And then who left the garage?
 {¶ 26} "A. He asked [A.W.] to leave the garage because [A.W.] — He was like, `[A.W.], if you're smoking, stop smoking.' He was like, `Don't say my name *Page 10 
man.' And then he was like, `You didn't have to say all that', and then he asked [A.W.] to leave the garage.
 {¶ 27} "
 {¶ 28} "Q. * * * When you guys were all arguing outside the garage what else happened?
 {¶ 29} "A. * * * Then that's when his older brother, Tony, pulled the gun out in front of his face and my mother moved his hand like, `You ain't going to shoot that gun, so you might as well move it.' Saying like, `Why you got that gun out in the first place[?]'"
 {¶ 30} We do not find that defense counsel was deficient for failing to object to this testimony. The statements recounted were not offered as evidence to prove the matter asserted and are therefore not hearsay. Even if the testimony had been hearsay to which counsel could have objected, appellant has failed to demonstrate any prejudice from counsel's failure to do so. There was direct testimony by Mr. Poke about the argument between him and appellant over the smoking. Indeed, appellant's own witness testified that Mr. Poke was angry at appellant for smoking and told him to leave. There was also direct testimony by both Mr. and Mrs. Poke that they saw Tony pull a gun and put it in Mr. Poke's face.
 {¶ 31} Neither do we find defense counsel deficient for failing to object to Mr. Poke's rambling narrative. Appellant does not explain how the narrative testimony *Page 11 
prejudiced him except to say that the effect of the hearsay and narrative evidence was to "prejudice the finder of fact with the shear [sic] weight of negativity." The weight of negativity in this case resulted from the three eyewitness' accounts of appellant firing a gun in their direction, not from counsel's failure to raise objections to the improper form of some of the testimony.
 {¶ 32} Appellant's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas Court — Juvenile Division to carry this judgment into execution. The finding of delinquency having been affirmed, any bail or stay of execution pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 PATRICIA ANN BLACKMON, P.J., and ANN DYKE, J., CONCUR *Page 1